IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,           )
                                    )
                  Plaintiff,        )      **CRIMINAL ACTION**
                                    )
v.                                  )      No.  11-10277-MLB
                                    )
JUAN ABEL MENCHACA-VALDES,          )
                                    )
                  Defendant.        )
_____ )

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to dismiss the indictment. (Doc. 19). Defendant moves for dismissal on the basis that he was improperly denied judicial review and that the deportation order was not final prior to his removal. On April 19, 2012, the court ordered the government to show cause why the indictment should not be dismissed after determining that the order of deportation was not final. (Doc. 22). The government has now responded to the court's show cause order. (Doc. 24).

## I.   Facts and Procedural History

Defendant was six years old when his family came to Kansas from Mexico. Defendant graduated from high school in Garden City and later married Antonia Flores, a United States citizen. In 1993, defendant received conditional resident status and later obtained permanent resident status. Since 1993, defendant has been arrested 15 times, excluding his arrest on the current indictment, and has five convictions.[1] Defendant has been arrested and convicted of driving

_____

[1] The immigration judge included a detailed criminal history in her oral decision. <u>See</u> Doc. 19, exh. 1.

under the influence on several occasions.  Defendant also violated his probation on several occasions.  In August 1999, defendant was convicted of endangering a child.  The charges stemmed from defendant's inappropriate sexual fondling of his two young nieces. In 2000, defendant was charged with battery, which resulted in his probation being revoked and a sentence imposed.

In June 2010, defendant was arrested after being stopped by a police officer and found to be in possession of cocaine.  Defendant was sentenced to probation.  The Department of Homeland Security (DHS) initiated removal proceedings against defendant pursuant to section 237(a)(2)(B)(I) of the Immigration and Nationality Act.  Additionally, DHS lodged charges of removability based on defendant's other misdemeanor convictions.  After deportation hearings were held in Kansas City, Missouri, an immigration judge ordered defendant's removal on April 27, 2011.  The immigration judge informed defendant that he had a right to appeal her decision or waive his right to an appeal.  Defendant told the judge that he would like to speak to his family.  The judge informed defendant that she would indicate that he is reserving his right to appeal and that he would have thirty days to decide.

On April 29, defendant wrote a letter to the judge and an immigration officer.  In his letter to the judge, defendant said that "at this time" he would "not go forward with the appeal," but that he would explore "what they legally can to proceed on [defendant's] return to the states" and "there has to be a legal loop hole."  Doc. 19, exh. C.  In defendant's letter to the immigration officer, he asks if there is anyway to be released on bond so that he may attend his

son's college graduation in May.

On May 17, defendant signed a notice of appeal.  The notice was placed in the mail on May 20.  On May 18, however, DHS issued a warrant of removal and defendant was removed to Mexico on May 20.  On May 23, the Eighth Circuit Board of Immigration Appeals (BIA) received defendant's appeal.  The BIA sent a notice of receipt to defendant's home address in Garden City.  The notice stated that if defendant is removed pending the appeal the BIA would consider his appeal withdrawn and the immigration judge's order will become final.  Defendant's family contacted defendant in Mexico and informed him of the appeal status.  Defendant attempted to return to the United States and was apprehended on July 1 in Texas.

On July 5, DHS submitted a notice to the BIA that defendant had withdrawn his appeal and had been removed.  DHS attached defendant's letter to the immigration judge and the removal documents.  The BIA issued an order on August 29 dismissing defendant's appeal on the basis that he was no longer in the United States and could not prosecute his appeal.  On December 22, 2011, the grand jury returned an indictment against defendant charging him with illegally entry into the United States after being deported in violation of 8 U.S.C. § 1326(a).

## II.  Analysis

### A.  Final Order of Deportation

A prosecution for illegal reentry under § 1326(a) generally requires the government to prove two things: (1) that the alien "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal

is outstanding"; and (2) that the alien thereafter has "enter[ed], attempt[ed] to enter, or is at any time found in, the United States." United States v. Adame-Orozco, 607 F.3d 647, 651 (10th Cir. 2010).

The government asserts that the order of deportation does not need to be final in order for it to meet its burden on the first element. The statute sets forth the following relevant definitions:

> (47)(A) The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

> (B) The order described under subparagraph (A) shall become final upon the earlier of--

> (i) a determination by the Board of Immigration Appeals affirming such order; or

> (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

8 U.S.C.A. § 1101.

The first element of section 1326(a) requires that an order of deportation be outstanding but there is no requirement that the order be final. There was clearly an order of deportation entered in this case prior to defendant's removal. While that order was not final, as that term is used in the statute, the order was outstanding, i.e. "still in existence." Black's Law Dictionary 1287 (3d ed. 1992). Therefore, the court agrees with the government and finds that the indictment is not defective solely because defendant was deported prior to a "final" order of deportation.[2]

---

[2] The term "final" appears to be relevant in determining whether the United States District and Appellate courts have jurisdiction over the decisions of the immigration courts.

-4-

**B.  Collateral Attack**

The court next turns to defendant's second contention, that the deportation proceedings were unlawful.

> A defendant-alien may challenge the legality of a deportation order if, but only if, he can show that:
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

Adame-Orozco, 607 F.3d at 651 (citing 8 U.S.C. § 1326(d)).

The government asserts that the first and second elements have not been met because defendant withdrew his appeal and waived his right to appeal.  Defendant, however, asserts that the record reflects his desire to retain his right to appeal and his confusion about the process.  While "[s]tatutory exhaustion requirements, such as Section 1326(d)(1), are generally not subject to exceptions," there is at least one exception: "the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal."  United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004). "A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1), therefore, only where an alien's waiver of administrative review was knowing and intelligent.  Where this condition is met, an alien can be constitutionally prohibited from collaterally attacking his deportation proceeding, even if denied the opportunity for judicial review, because exhaustion is a valid precondition for

judicial review and a knowing and voluntary failure to exhaust would validly waive the right to judicial review." Id. at 136-37.

The record reflects that defendant did not waive his right to appeal during the deportation proceedings. (Doc. 25, exh. 1). Defendant did, however, send a letter to the immigration judge two days after the proceeding and informed the judge that he would not appeal. While that statement could be construed as an intent not to pursue an appeal, the statement is preceded by the language "at this time" which suggests that defendant, after talking with his family, may change his position at a later date. Admittedly, defendant's actions show that he did desire judicial review. Defendant, however, was deported the day after he signed his notice of appeal. As a result, the BIA dismissed defendant's appeal. Because defendant did not intentionally leave the country and withdraw his appeal and because the letter to the immigration judge was not a valid waiver of appeal, the court finds that defendant did not knowingly waive his right to appeal and defendant has satisfied the first element under section 1326(d).

Turning to the second element, defendant must establish that the deportation proceedings improperly deprived him of the opportunity for judicial review. The government points only to the waiver and withdrawal as evidence that defendant has not established this element. The record, however, supports a finding that defendant was deprived of judicial review. Defendant filed an appeal which defendant presumably intended to prosecute but was unable to do so because of his deportation. Moreover, defendant had no reason to believe that he was abandoning his appeal as a result of his

deportation because defendant never received the notice sent from the BIA.  Moreover, the government does not assert that defendant could have taken any additional action after his deportation to preserve his rights.  Therefore, defendant was denied the opportunity for judicial review because he was deported after filing his appeal.

Finally, the court must determine whether the entry of the order was fundamentally unfair.  To establish that the underlying proceeding was fundamentally unfair, defendant must show that he was prejudiced.  See United States v. Aranda-Hernandez, 95 F.3d 977, 980 (10th Cir. 1996).  Defendant bears the burden of proving prejudice.  United States v. Aquirre-Tello, 353 F.3d 1199, 1204 (10th Cir. 2004)(en banc).  In Aquirre-Tello, the Tenth Circuit held that in order to demonstrate prejudice, a defendant must show a "reasonable likelihood that, but for the errors complained of, he would not have been deported."  353 F.3d at 1208.

Defendant asserts that he would not have been deported because he would have been released on an appeal bond and/or obtained relief on review.  While defendant is correct that he would not have been deported if he had been released on an appeal bond, defendant's burden requires a different showing.  Defendant must show that there is a reasonable likelihood that he "would have obtained relief from deportation," not just temporary relief, such as a stay of the deportation.  Aquirre-Tello, 353 F.3d at 1209.

Defendant contends that he would have obtained relief on review because of his family ties, the number of years he has been a resident, and the immigration judge's improper reliance on an outdated criminal record.  (Doc. 21 at 4).  While defendant does not expressly

-7-

state what aspect of the immigration judge's opinion he would attack on appeal, it appears that defendant is focused on the decision to deny his request for cancellation of removal under section 240A(a).[3]

Under INA § 240A(a), a deportable alien is eligible for discretionary relief in the form of cancellation of removal if he (1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of any aggravated felony. 8 U.S.C. § 1229b(a). "The Bureau of Immigration Affairs or the Immigration Judge decides whether an applicant is entitled to a favorable exercise of agency discretion on a case by case basis by taking into account the social and humane considerations presented in the applicant's favor and balancing then against the adverse factors that evidence the applicant's undesirability as a permanent resident." Vargas-Hernandez v. Gonzalez, 497 F.3d 919, 924 (9th Cir. 2007).

The following relevant factors for deciding eligibility for relief include: length of residence in the United States, work history, family ties in the United States, evidence of hardship to the alien and his family if deportation occurs, service in the armed forces, property or business ties, evidence of service to the community, existence and nature of a criminal record, and proof of genuine rehabilitation from past criminal activity. Matter of C-V-T, 22 I. & N. Dec. 7, 11 (BIA 1998).

---

[3] Defendant does not assert that he would have challenged the immigration judge's decision denying asylum or withholding of removal under the Convention Against Torture.

Defendant asserts that his lawful residence in the United States since 1993 and his family relationships in the United States show favorable equities that outweigh his criminal history. Defendant, however, has not pointed to any authority which would support the conclusion that there is a reasonable likelihood that the immigration judge's decision would have been reversed on appeal by the BIA. Defendant has the burden to show that the immigration judge's decision was erroneous and he has not done so. Aquirre-Tello, 353 F.3d at 1208. Moreover, the court does not find any error in the decision. The immigration judge thoroughly examined defendant's extensive criminal history and background in a twenty-eight page decision which appeared to address all issues. Importantly, the immigration judge found that defendant did not demonstrate rehabilitation. "[A] respondent who has a criminal record will ordinarily be required to establish rehabilitation before relief will be granted as a matter of discretion." In re: Erron Samuel Lewis, 2007 WL 129749 (BIA 2007).

The Court concludes that facts and circumstances of this case do not support any plausible grounds for discretionary relief. Therefore, defendant has not established that there is a reasonable likelihood that he would have received relief from deportation on appeal.

### III.  Conclusion

Defendant's motion to dismiss the indictment is denied. (Doc. 19). A status conference in this case is set for June 4, 2012 at 10:15 a.m.

IT IS SO ORDERED.

Dated this   10th   day of May 2012, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE